JAY E. TIBBITS, Respondent, *v.* EDWARD L'ESTRANGE PHIPPS, Appellant, Impleaded with WILLIAM PHILLIPS and ISABELLA M. BURTON, Respondents.

*Meaning of the term "partitions" — the testimony of builders as to the ordinary order of construction, is competent to explain it — proof as to the reason of the refusal of an architect to give a certificate — statement based on another's evidence.*

*Semble,* that in an action brought for the foreclosure of a mechanic's lien, the testimony of builders to the effect that the cellar work is, ordinarily, the last done in the course of construction, is competent to explain the meaning of the term "partitions" in a contract, and to show that the cellar partitions were not embraced in that term.

Upon the question whether the architect s refusal to give the contractor a certificate was unreasonable and unjustifiable, conversations of the architect with the contractor and his workmen, at the time he was acting on the subject-matter, tending to show that the architect refused to give the certificate because the owners had directed him not to give it, and that, in fact, he regarded the work as good, are competent as part of the *res gestæ.*

In such a case a witness should not be allowed to testify that he heard the evidence of the contractor, as to the manner in which a corner post had been spliced and set, and that, if it was so set, the work was properly done.

APPEAL by the defendant, Edward L'Estrange Phipps, from a judgment of the Supreme Court in favor of the plaintiff and the defendant, Isabella M. Burton, entered in the office of the clerk of the county of Westchester, on the 13th day of September, 1897, upon the report of a referee.

*Isaac N. Mills,* for the appellant.

*W. R. Spooner,* for the plaintiff, respondent.

*Frank A. Bennett,* for the defendants Burton and Phillips, respondents.

CULLEN, J.:

This action is brought to foreclose a mechanic's lien.

The first objection raised to the recovery of the judgment is that the plaintiff's lien was not valid, because filed for a largely excessive amount. When the plaintiff had proceeded with the building so far as to reach his third payment under the contract, a dispute arose between him and the owner as to the character and details of the work. The appellant refused to make the payment, and the plaintiff refused to proceed with the building. Thereupon the plaintiff filed his notice of lien, wherein he stated that the labor and services were performed and materials were furnished in the erection of the building pursuant to a contract, and that the amount unpaid under the contract was $2,400, of which $1,300 was then due, and $1,100 would become due on its completion.

We think that the notice was in exact compliance with the statute. But, however that may be, it stated truly and accurately the facts, and, therefore, is not subject to the condemnation passed in *Foster* v. *Schneider* (50 Hun, 151) and *Ringle* v. *Wallis Iron Works* (76 id. 449).

*Second,* under the contract the second payment became due to the contractor when the building was "ready for lathing, roof on, and partitions set." When the third payment was claimed, the appellant resisted payment on the ground that the cellar partitions had not been erected as required by the contract, as a condition for the second payment. As the appellant made the second payment without objection, it may be that he waived the builder's default. But I think there was no default. The term "partitions" did not

include the partitions in the cellars.    The latter were not partitions
of the building itself, but mere subdivisions of the cellar to make
coal boxes for different tenants.    This is conclusively shown by
reference to the specifications, which draw a distinction between
partitions and cellar partitions; and the appellant's architect testified
that the specifications as to the former did not relate to the latter.
We think the testimony of the builders to the effect that the cellar
work is ordinarily the last done in the course of construction, was
competent, so as to explain the meaning of the term " partitions "
in the contract.    However, if incompetent, it worked no harm, as
the evidence of the defendant's architect settled the question.

_Third_, the architect condemned the plaster in the building.    The
referee found, and the evidence was ample to support the finding,
that the plaster was good, and in substantial compliance with the
specifications.    The contract required the plaintiff to obtain the
architect's certificate as a condition precedent to his right to demand
the payment.    The referee has further found that the architect's
refusal to give the certificate was unreasonable and unjustifiable.
This, also, we think, was supported by the evidence.    The conver-
sations of the architect with the plaintiff and his workmen at the
time he was acting on the subject-matter, were competent as part of
the _res gestæ_.    These tended to show that he refused to give the
certificate because the owner had directed him not to give it, and
that, in fact, he regarded the work as good.

_Fourth_, we think the appellant should have been allowed the
expense of replacing the defective corner post, amounting to fifty-
eight dollars and sixty cents.    It is unnecessary to discuss it, as
there certainly was an error in admission of the testimony as to
this item, for which the judgment must be reversed.    Over the
objection and exception of the appellant, a witness was allowed to
testify that he heard the evidence of the plaintiff as to the manner
in which the corner post had been spliced and set, and that if it
was so set the work was properly done.    Such evidence was improper.
(_Reynolds_ v. _Robinson_, 64 N. Y. 589 ; _Guiterman_ v. _Liverpool,
etc., Steamship Co._, 83 id. 358 ; _Link_ v. _Sheldon_, 136 id. 1.)

The judgment appealed from should be reversed and a new trial
granted, costs to abide the event, unless plaintiff stipulates to
reduce the recovery by the sum of fifty-eight dollars and sixty cents,

with interest from April 15, 1895, in which case the judgment as reduced should be affirmed, without costs of this appeal to either party.

All concurred.

Judgment reversed, and new trial granted before a new referee to be appointed at Special Term, unless within twenty days plaintiff stipulates to deduct from the recovery of damages fifty-eight dollars and sixty cents, with interest from April 15, 1895; and in case such stipulation is made, then the judgment, as reduced, is affirmed, without costs of this appeal to either party.